1 | RONALD CRUZ, State Bar No. 267038
SHANTA DRIVER, Michigan Bar No. P65007
2 | United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
1985 Linden Street
3 | Oakland, CA 94607
(510) 875-4463 Fax: (313) 586-0089
4 | ronald.cruz@ueaa.net, shanta.driver@ueaa.net
Attorneys for Plaintiffs
5 | *Pro hac vice application pending

6 |

7 |                    **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
8 |

9 | DEFEND AFFIRMATIVE ACTION PARTY,          **CASE NO. 4:16-cv-01575**
MICHAEL CORTEZ-MEJIA, STEPHANIE
NICOLE GARCIA, THOMAS MOORE, NANCE          **COMPLAINT FOR DAMAGES,**
10 | MURILLO, AAREFAH MOSAVI, AZUCENA          **PENALTIES, AND INJUNCTIVE**
ZEPEDA, JULIA OSBORNE, ERFAN MURADI,         **RELIEF:**
11 | DAVID COLBY, HANNAH DOBROTT, SUSAN
CIFUENTES,
12 |                                            • **42 U.S.C. § 1983 (First and**
Plaintiffs,                                  **Fourteenth Amendment Rights**
13 |                                            **to Freedom of Speech,**
vs.                                          **Association, and Equal**
14 |                                            **Protection)**
REGENTS OF THE UNIVERSITY OF                • **California Constitution Article**
15 | CALIFORNIA; ASSOCIATED STUDENTS OF         **1, §§ 2,7**
THE UNIVERSITY OF CALIFORNIA AT             • **Title IX of the Education**
16 | BERKELEY; JANET NAPOLITANO, NICHOLAS        **Amendments of 1972**
DIRKS, and YORDANOS DEJEN in their official • **California Government Code §§**
17 | capacities; and MEERI SHIN, JONATHAN        **11120-11132 (Bagley-Keene**
MORRIS, ALEX KLIMEK, SHOUJIT BANERJEE,       **Open Meeting Act)**
18 | JERRY CHIANG, JON REY, LINSHA QI,
ZHENRONG (JEN) SHI, VIVIAN ZHU, SELENA
19 | KIM, EMMA IRELAND, JASMINE HUGHES,         **JURY TRIAL DEMANDED**
HYE BIN CHO, NIGUEL MANUEL, STANLEY
20 | HAN, ERIC WILCOX, ANDREW SCHWARTZ,
ALEXANDRA GOLDWYN, MATTHEW CHANG,
21 | and DOES 1-10, inclusive, in their individual and
official capacities;
22 |
Defendants.
23 |

24 | _____

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575
1

Pursuant to the Federal Rules of Civil Procedure, the Plaintiffs, by and through their attorneys, United for Equality and Affirmative Action Legal Defense Fund (UEAALDF), for their Complaint against Defendants, state as follows:

## JURISDICTION

1. This is a civil rights action brought for injunctive relief and for redress for violations under 42 U.S.C. § 1983, First and Fourteenth Amendments to the United States Constitution; California Constitution Article 1, §§ 2,7; Title IX of the Education Amendments of 1972; and California Government Code §§ 11120-11132 (Bagley-Keene Open Meeting Act).

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and 28 USC §1343(3).

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper in this County as Defendants are headquartered, attend school and work in Alameda County in California. The events, acts and/or omissions complained of herein occurred in Alameda County, California, and this action is properly assigned to United States District Court, Northern District of California.

5. The amount in controversy exceeds limited jurisdiction.

6. This action is timely filed within all applicable statutes of limitation.

## PARTIES

7. Plaintiff Defend Affirmative Action Party (DAAP) is a student organization at the University of California, Berkeley (UCB) campus registered as a political party with the Associated Students of the University of California at Berkeley (ASUC).

1           DAAP consists of UCB students running for office within the ASUC student

2           government, and their supporters.

3    8.    DAAP was founded in 1998 when the UC Regents' ban on affirmative action was

4           implemented, causing the number of underrepresented minority students at UC-

5           Berkeley to plummet.[1] Since its formation, DAAP has been a constant and

6           consistent voice for minority students, documented and undocumented immigrant

7           students, international students, poor and working class students, and for all

8           specially oppressed students on campus, including women and LGBT (lesbian, gay,

9           bisexual, transgender) students.

10   9.    DAAP has repeatedly opposed and criticized the policy and positions of the UC

11          administration that stand counter to the interest of DAAP's constituencies. Some of

12          the political issues that DAAP has differed with the UCB administration on include

13          but are not limited to the enrollment of underrepresented minority students, the

14          growing privatization of the university, the university's support for Israel,

15          maintenance of the Student Code of Conduct, and, this academic year and most

16          prominently, the UC-Berkeley administration's response to sexual harassment and

17          assault of women students on the campus. DAAP has championed the cases of

18          Latina/o and black students and faculty members who have been critical of the

19          university's refusal to protect them against their rapists and who advocate for

20          academic norms and standards that are not applied by the UC-Berkeley

21          administration.

22

23   [1] One black student was in the entering class at UC-Berkeley's Boalt Law School that year.

24       COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF

1    10.    DAAP has been the electoral party supported by the Coalition to Defend

2    Affirmative Action, Integration & Immigrant Rights and Fight for Equality By Any

3    Means Necessary (BAMN), a national civil rights organization. Traditionally, the

4    DAAP slate has included members of BAMN and has been open to non-members

5    of BAMN that agree with DAAP's election platform.

6    11.    The UC-Berkeley BAMN chapter is a UC-Berkeley registered student organization.

7    All of the DAAP candidates running in this year's ASUC elections are members of

8    BAMN.

9    12.    Plaintiff Michael Cortez-Mejia is a UCB student, DAAP candidate for ASUC

10    President, and DAAP candidate for ASUC Senate. He is the signatory for DAAP.

11    13.    Plaintiff Stephanie Nicole Garcia is a UCB student, DAAP candidate for ASUC

12    Student Advocate, and DAAP candidate for ASUC Senate. Ms. Garcia is the only

13    candidate running for UCB ASUC Student Advocate position against Selina Lao,

14    who is the candidate endorsed by the CalSERVE and Student Action parties.

15    CalSERVE and Student Action are the two other longstanding UC-Berkeley

16    political parties, and are electoral opponents of DAAP.

17    14.    From the beginning of the Fall semester of the 2015-16 school year, Ms. Garcia has

18    had open and public political disagreements and conflicts with the current Student

19    Advocate Leah Romm and her staff. Leah Romm had run against DAAP's

20    candidate for Student Advocate, Bianca Huntley-Ortega, and was endorsed by

21    CalSERVE and Student Action. The conflicts between Ms. Garcia and Ms. Romm

22    represent counterposed political viewpoints on how to protect women on the UC-

23    Berkeley campus from rape. Ms. Garcia publicly disclosed the name of the UC-

24

Berkeley student who raped her, Omar Pedroza, and publicized the details of the rape itself. (See Declarations of Angela Dancev, Julia Osborne and Stephanie Nicole Garcia.) The Student Advocate's office accused Ms. Garcia of falsifying what occurred and, in an open show of political partisanship, offered to defend Mr. Pedroza at his Nov. 28, 2015 hearing, despite the fact that he had hired an attorney to advise him. Mr. Pedroza was found guilty of raping Ms. Garcia by the Student Code of Conduct panel body. (See Declaration of Stephanie Nicole Garcia.) He has not appealed the finding that he raped Ms. Garcia.

15. The election of Ms. Garcia to the position of Student Advocate would be understood by all as a declaration of a change in the political policies and political priorities of the Student Advocate and the office she oversees.

16. Plaintiff Aarefah Mosavi is a UCB student, DAAP candidate for ASUC External Affairs Vice President and for ASUC Senate. Ms. Mosavi is known nationally as an outspoken advocate for women who have been discriminated against, sexually harassed, and sexually assaulted on college and university campuses. Ms. Mosavi's presentation at a BAMN-sponsored UC-Berkeley tribunal in April 2015, on her rape at Mt. San Antonio Community College (Mt. SAC) and the failure of the Mt. SAC administration's failure to take action was posted on Youtube afterwards. Her presentation has been viewed over 16,000 times. Ms. Mosavi was invited to appear at this year's Academy Awards Oscars ceremony. She was invited by producers of the movie *The Hunting Ground* that documented college and university administrations' failure to protect women who were raped on their campus. However, when the documentary *The Hunting Ground* was shown at the UC-

1       Berkeley campus at an event sponsored by organizations, including the campus-

2       based Berkeley SPH Office of Diversity Services and the UC-Berkeley Cal

3       Democrats student group, Ms. Mosavi was invited to speak, and then excluded

4       because of her decision to name her rapist, Chester Brown, and provide a detailed

5       description of how she was raped.

6   17.   The issue of how to implement Title IX and the new California "Yes Means Yes"

7       law, SB 967, is the most clearly differentiating issue between DAAP and the other

8       ASUC political parties running for student government.

9   18.   Plaintiff Thomas Moore is a UCB student, DAAP candidate for ASUC Executive

10      Vice President, and DAAP candidate for ASUC Senate.

11  19.   Plaintiff Nance Murillo is a UCB student, DAAP candidate for ASUC Academic

12      Affairs Vice President, and DAAP candidate for ASUC Senate.

13  20.   Plaintiff Azucena Zepeda is a UCB student and a DAAP candidate for ASUC

14      Senate.

15  21.   Plaintiff Julia Osborne is a UCB student and a DAAP candidate for ASUC Senate.

16  22.   Plaintiff Erfan Muradi is a UCB student and a DAAP candidate for ASUC Senate.

17  23.   Plaintiff David Colby is a UCB student and a DAAP candidate for ASUC Senate.

18  24.   Plaintiff Hannah Dobrott is a UCB student and a DAAP candidate for ASUC

19      Senate.

20  25.   Plaintiff Susan Cifuentes is a UCB student and a DAAP candidate for ASUC

21      Senate.

22  26.   Defendant Regents of the University of California is a public corporation and a

23      governmental entity, duly organized and existing under the Constitution of the State

24

of California, Article IX, Section 9. It receives federal funds, collects student tuition, and allocates funds to the Associated Students organizations, including the Associated Students of the University of California (ASUC) at Berkeley.

27.   All of the ten campuses that make up the University of California system have individual Associated Student organizations that are "official units of the university exercising authorities concerning students' affairs by delegations from The Regents, the President, and the Chancellors." See EXHIBIT A (Regents' Policy 3301 ("Policy on Associated Students") approved May 19, 1972).

28.   Defendant Associated Students of the University of California at Berkeley (ASUC) is the student government at UC-Berkeley.

29.   In 1977, the ASUC was given exceptional status by the UC Regents to become "an independent, non-profit, unincorporated association" which would remain joined to the Regents through joint oversight "of certain services, activities, and facilities on the Berkeley campus including the Student Union building, the ASUC bookstore, and Bear's Lair restaurant, selected vending machine operations, and the Cal-ASUC Box Offices." See EXHIBIT A (Regents' Policy 3301 ("Policy on Associated Students") approved June 17, 1977). The ASUC's special status was based on its economic control over the aforementioned assets which provided funds to the ASUC in addition to the student fees it received from the Regents.

30.   In 1998, the ASUC was forced to cede control over the assets it possessed as part a settlement of a lawsuit brought against the ASUC by the UC Regents. The 1998 agreement titled "The ASUC Commercial Activities and Student Services Agreement" (an agreement signed by the Regents of the University of California

and the ASUC, effective March 19, 1998) gave control over the financial management of the ASUC's Commercial Agreement to a body titled "the ASUC Auxiliary" ("the Auxiliary").[2] The agreement constituted the Auxiliary as a board consisting of five representatives chosen by the Chancellor of UC-Berkeley and four members of the ASUC. The Executive Director of the Auxiliary is a university employee who answers directly to the Chancellor. The UC-Berkeley Chancellor has the right to veto any decisions made by the Auxiliary. The Auxiliary has the right to appeal the Chancellor's veto to the Chancellor. The Chancellor has the final authority to accept or deny the appeal. See pages 10-11 of EXHIBIT B,(section on "Chancellor's Authority"). The ASUC Auxiliary is currently "a department within the Division of Student Affairs and acts as the administrative arm of the ASUC" (*Daily Cal* May 19, 2014). The ASUC Commercial Activities Agreement of 1998 and those that followed, acknowledged the importance of the ASUC's ownership and operation of the student union and agreed to "continue this tradition of service to the campus."

31.   The majority of funding allocated to the ASUC for distribution to student organizations and for student activities comes from a student activities fee established by the UC Regents and allocated to the ASUC by the UC-Berkeley Chancellor. The ASUC offices and activities are conducted on campus. "The

---

[2] In 2014, in a separate ASUC Commercial Activities Agreement, the name of the ASUC Auxiliary was changed to the "ASUC Student Union." A complicated formula for the allocation of some of the profits from the assets was replaced by a flat rate payment of $250,000/year to be split between the ASUC and the Graduate Assembly, regardless of the actual amount of profits received by the board. See EXHIBIT B ("Commercial Activities and Student Services Agreement," signed May 14, 2014).

enabling documents [of the ASUC], as well as all their programs and activities" must be created with consultation with the Chancellor and consistent with the policies of the official unit of the University." See EXHIBIT C, p. 2 (University of California Policies Applying to Campus Activities Organizations and Students 60.00 (PACAOS-60) "Policy on Student Governments").

32.     Defendant Janet Napolitano is the President of the University of California and is sued in her official capacity. In relation to the ASUC, Napolitano is authorized by UC Regents Policy 3301 ("Policy on Associated Students") to "continue to take all administrative action which is necessary or appropriate to treat the Associated Students and all of their activities as integral parts of the University, including, in particular, steps necessary to secure exemption from taxes on property administered by the Associated Students and from government permits and fees for their activities, and actions to confirm that employees of the Associated Students are employees of the University." See EXHIBIT A.

33.     Defendant Nicholas Dirks is the Chancellor of the University of California at Berkeley (UCB) and is sued in his official capacity. Dirks reports directly to Defendant Napolitano and is the ultimate policy-making official of UCB.

34.     Chancellor Dirks has the responsibility to assure the implementation of the University of California PACAOS's, including PACAOS-30 ("Policy on Speech and Advocacy"), which outlines the university's "commitment to assuring that all persons may exercise the Constitutionally protected rights of free expression, speech, assembly, and worship" (30.10). The University "asserts its right to regulate the time, place, and manner of speech that would interfere with university functions,

1    endanger persons, make persons involuntary audiences, or place them in reasonable

2    fear and would endanger personal safety" (30.30). See EXHIBIT D (University of

3    California PACAOS-30).

4    35.    In contrast, the University recognizes its obligation to provide faculty, students, or

5    staff the unfettered right "to participate either as individuals or as members of a

6    group in the political process for supporting candidates for political office or any

7    other political activity" (30.40). EXHIBIT D.

8    36.    Defendant Yordanos Dejen is the President of the ASUC, and is sued in her official

9    capacity. Dejen is the chief executive and an ultimate policy-making official of the

10    ASUC.

11    37.    Defendant Meeri Shin is Chair of the ASUC Elections Council, and is sued in her

12    individual and official capacities. The ASUC Elections Council is a body appointed

13    by the ASUC on a yearly basis. (ASUC Constitution, Article VII Section 1C)

14    38.    Defendant Jonathan Morris is a member of the ASUC Elections Council, and an

15    officer in the Graduate Student Assembly, and is sued in his individual and official

16    capacities.

17    39.    Defendant Alex Klimek is a member of the ASUC Elections Council, and is sued in

18    his individual and official capacities.

19    40.    Defendant Shoujit Banerjee is a member of the ASUC Elections Council, and is

20    sued in his individual and official capacities.

21    41.    Defendant Jerry Chiang is a member of the ASUC Elections Council, and is sued in

22    his individual and official capacities.

23

24

42.    Defendant Jon Rey is a member of the ASUC Elections Council, and is sued in his individual and official capacities.

43.    Defendant Linsha Qi is a member of the ASUC Elections Council, and is sued in her individual and official capacities.

44.    Defendant Zhenrong (Jen) Shi is a member of the ASUC Elections Council, and is sued in her individual and official capacities.

45.    Defendant Vivian Zhu is a member of the ASUC Elections Council, and is sued in her individual and official capacities.

46.    Defendant Selena Kim is a member of the ASUC Elections Council, and is sued in her individual and official capacities.

47.    Defendant Emma Ireland is the Chair of the ASUC Judicial Council, a member of the Elections Council, and is sued in her individual and official capacities. The Judicial Council is comprised of six members who are approved by the ASUC Senate. (ASUC Constitution Article IV, Section 2(A))

48.    Defendant Jasmine Hughes is Associate Chief Justice of the ASUC Judicial Council, and is sued in her individual and official capacities.

49.    Defendant Hye Bin Cho is a Senior Associate Justice of the ASUC Judicial Council, and is sued in her individual and official capacities.

50.    Defendant Niguel Manuel is a Senior Associate Justice of the ASUC Judicial Council, and is sued in his individual and official capacities.

51.    Defendant Stanley Han is an Associate Justice of the ASUC Judicial Council, and is sued in his individual and official capacities.

52. Defendant Eric Wilcox is an Associate Justice of the ASUC Judicial Council, and is sued in his individual and official capacities.

53. Defendant Andrew Schwartz is an Associate Justice of the ASUC Judicial Council, and is sued in his individual and official capacities.

54. Defendant Alexandra Goldwyn is an Associate Justice of the ASUC Judicial Council, and is sued in her individual and official capacities.

55. Defendant Matthew Chang is an Associate Justice of the ASUC Judicial Council, and is sued in his individual and official capacities.

56. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 and therefore sue these Defendants by such fictitious names. Plaintiffs allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-10 when they have been ascertained.

57. At all material times, the individually named Defendants acted under color of the laws, statutes, ordinances, policies, practices, customs, and usages of the State of California and the University of California.

58. Defendants were and are persons and entities whose conduct is governed and regulated by all California laws and statutes, including the common law, the California Constitution, and the public policy of the State of California.

59. Plaintiffs are informed and believe, and thereon allege, that the unlawful actions complained of herein, as a result of which Plaintiffs sustained the injuries and damages enumerated below, were and are violations of the laws of the State of California and the United States.

**GENERAL ALLEGATIONS**

60. Plaintiffs seek a preliminary injunction and temporary restraining order pursuant to Federal Rule of Civil Procedure 65, and compensatory and punitive damages, for the unlawful exclusion and denial of rights to the Defend Affirmative Action Party (DAAP) and its individual candidates in the Associated Students of the University of California (Berkeley) March 2016 student government elections.

61. The Plaintiffs are members of the Defend Affirmative Action Party, a student organization at the University of California, Berkeley that has run for office and participated in the Associated Students of the University of California (ASUC) for eighteen years. DAAP candidates have also been elected and served in office. The Plaintiffs seek to participate in the student government election that is currently underway, and specifically to participate as a registered political party on the ballot. The Plaintiffs assert their right to do so on equal terms with all other students. That right is at stake.

62. The Defendant members of the ASUC Elections Council and Judicial Council have effectively banned the Defend Affirmative Action Party as a political affiliation, imposing the unique and discriminatory restriction that its affiliated candidates—unlike the candidates of other parties—must run as "independents" on the ballot instead.

63. At every respective stage of the candidate registration process, the ASUC Elections Council and Judicial Council took protracted and evasive measures in order to exclude the Defend Affirmative Action Party from the ballot, manipulating the registration process and violating its by-laws to create a series of impenetrable

1           obstacles. (See attached Declarations.) Where those same obstacles created

2           problems for another party or candidate, the Elections Council resolved those

3           problems favorably for all besides the Defend Affirmative Action Party. As

4           described under "Specific Allegations," these ASUC bodies refused to operate any

5           reasonable or lawful registration or appeal process insofar as it pertained to the

6           Plaintiffs, leaving the Plaintiffs with no recourse but to seek relief from this Court.

7   64.     The Defendants' decisions to exclude the Defend Affirmative Action Party have

8           created a second-class, blacklisted status for the party's members, threatening to

9           chill freedom of speech at the University of California, Berkeley. Of note, this

10          exclusion has occurred in the midst of an ongoing lawsuit in which several former

11          candidates of the Defend Affirmative Action Party are suing UC-Berkeley

12          regarding infringements by the University administration against students' freedom

13          of speech that occurred during a peaceful protest action in 2011. DAAP candidates

14          are best known on campus for their advocacy of direct action to get students and

15          faculty members who have raped, sexually assaulted, harassed and discriminated

16          against women students removed from campus. Two DAAP ASUC Executive

17          Board and Senate candidates, Plaintiffs Stephanie Garcia and Aarefah Mosavi, are

18          recognized at UCB and increasingly on campuses across the country as role models

19          for women students determined to win. Mosavi and Garcia's decision to name their

20          rapist and publicize in detail what happened to them instead of remaining silent and

21          relying on university administrators or closed legal proceedings to get justice, have

22          been hotly debated on the UCB campus. The two current UCB administrators

23          named in the 2011 lawsuit, Harry Le Grande and Claire Holmes, are also the two

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575
14

1   highest ranking administrators directly responsible for overseeing the University's
2   response to the epidemic of sexual assaults occurring on college campuses across
3   the country. The singular and discriminatory exclusion of the Defend Affirmative
4   Action Party cannot be regarded as coincidental, and it sends a distinctly hostile
5   message to any students who might consider speaking out against injustice or
6   offering criticism of the University administration or its policies.

7   65.   The fact that the Defendants avoided spelling out this message explicitly—
8   restricting their method to bureaucratic intrigue, instead—does not help their case
9   and does not obscure the message. For many decades, Southern segregationists
10  excluded black Americans from the ballot box without explicit mention of race,
11  using their own legal intrigues of "grandfather clauses," poll taxes, and other
12  maneuvers. The difference in this case is that whereas the Southern segregationists
13  had established special laws through which to exclude and discriminate, the ASUC
14  Elections Council and Judicial Council actually decided to violate their own by-
15  laws *in addition to* violating the Constitutional rights of the Plaintiffs.

16
17  **SPECIFIC ALLEGATIONS**

18  66.   The Plaintiffs attempted to register for the ASUC ballot, following instructions
19  received via email correspondence with the Elections Council. On February 19,
20  2016, the ASUC Elections Council initiated a series of email exchanges with
21  Plaintiff Michael Cortez-Mejia, the presidential candidate and party signatory for
22  the Defend Affirmative Action Party. The Elections Council notified Michael
23  Cortez-Mejia that, if he wished to remain the party signatory, he would need to

24

submit a new party signatory form, or else he must "dissolve the party." See

EXHIBIT E, p. 2 (Cortez-Mejia email exchange with ASUC Elections

Councilmember, Public Defender and Defendant Jerry Chiang). Although this

seemed peculiar, Michael Cortez-Mejia, in good faith, attempted to register the

party online to renew his status as the signatory.

67. The Plaintiffs additionally attempted to register for the ASUC ballot through direct

contact with the Elections Council and ASUC office staff. When attempting to

register online, Michael Cortez-Mejia had found the ASUC website service to be

"glitchy" [see EXHIBIT F, p. 2 (Cortez-Mejia email exchange with ASUC

Elections Council Chair and Defendant Meeri Shin)], and lacking any function for

editing a submitted form. Multiple candidates of the Defend Affirmative Action

Party, as well, found that they were unable to register through the online service.

Thereupon, over the course of the next two weeks, Michael Cortez-Mejia and the

other affected party candidates visited the ASUC office in person to ensure that

their filing materials and fees were properly received. They submitted their forms

and paid their fees directly to the ASUC office. Michael Cortez-Mejia maintained

regular contact with the Elections Council, following the instructions that he

received from them. Cortez-Mejia confirmed with Elections Council representatives

that he had successfully completed DAAP's registration and the Elections Council

raised no concerns to suggest otherwise.

68. The Plaintiffs proactively sought out, and received, direct confirmation of having

successfully filed all registration materials and having made all necessary payments.

On the morning of March 11, 2016 (the due date for election filing materials), two

---

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

candidates and one supporter of the Defend Affirmative Action Party visited the
ASUC office in person to acquire confirmation that their party and candidates'
registration was, in fact, complete. The office staff confirmed that all materials were
in order and that nothing further was needed for the party's registration.

69.   The ASUC Elections Council, contradicting the direct verbal confirmation of the
Plaintiffs being successfully registered, subsequently claimed otherwise two days
after the filing deadline and rejected the Plaintiffs' party status on the ballot. On
March 13, the ASUC Elections Council Chair, Defendant Meeri Shin, emailed the
following to Michael Cortez-Mejia: "Unfortunately since DAAP failed to fill out an
endorsement form online as well as pay the $20 filing fee all DAAP candidates
have now been reclassified as Independent Candidates." See EXHIBIT F, p 3.

70.   The Plaintiffs, in good faith, sought to remedy this rejection by contacting the
Elections Council. Michael Cortez-Mejia responded to the rejection email that same
day (March 13) with a polite request: "Thank you for bringing this to our attention.
I was under the impression the election committee had this on file as we had
discussed the transfer of the Defend Affirmative Action Party signatory position
with you and Alex on multiple occasions and this was never mentioned. […] I
would like to work with your office so we can have all of our candidates' party
affiliation listed correctly. Thank you." See EXHIBIT F, pp. 2-3.

71.   The ASUC Elections Council flatly refused to allow the correction of the
(supposedly) incomplete endorsement form, in spite of clear language in the ASUC
By-Laws that requires the Elections Council to do so. The Elections Council Chair
Meeri Shin responded to Michael Cortez-Mejia's polite request for remedy: "the

1    deadline has passed and we cannot make any exceptions," [see EXHIBIT F, p. 2]

2    reiterating that the Defend Affirmative Action Party candidates must run as

3    independents, instead. Notwithstanding the deception that had been involved, this

4    refusal by the Elections Council clearly violated the ASUC By-Laws which require

5    that candidates must be given the opportunity to correct any errors in the filing

6    process:

7    "If a filing material is not approved, the submitter shall be promptly notified of any

8    problems or inconsistencies. *They shall be given the opportunity to correct their*

9    *filing material or appeal to the entire Elections Council."* EXHIBIT G (ASUC By-

10   Law 4107: Filing Materials, § 3.6) (emphasis added).

11   72.   Moreover, the Elections Council sought to impose this violation against the

12   Plaintiffs long before it was proper to make any such penalty against a party or

13   candidate, as the By-Laws also make clear that the finalization of all ballot

14   decisions should not occur until a later date, namely at the Mandatory Elections

15   Meeting. The By-Laws state: "A submitted Party Endorsement Form may be

16   amended until the point of no return at the Mandatory Elections Meeting, given that

17   the name of the party may not be changed." EXHIBIT H (ASUC By-Law 4202:

18   Parties, § 4.5)

19   73.   The Plaintiffs made formal appeals to reverse this denial of their rights, seeking

20   remedy through the ASUC Elections Council and Judicial Council. However, the

21   next several days became a circus of evasive maneuvers and obstinate refusals by

22   the ASUC Elections Council and Judicial Council, who would accept no outcome

23   other than the removal of the Defend Affirmative Action Party from the ballot. The

24

purposeful character of these maneuvers became even clearer when another party

and candidate—"CalSERVE" and Danielle Miguel—received precisely the same

remedy that the Elections Council claimed it "cannot make any exceptions" for in

regard to the Plaintiffs.

74.     The Plaintiffs made their first appeal to the ASUC Judicial Council on the evening

of March 14, drafting and submitting a petition seeking an injunction and expedited

hearing regarding the denial of party status.

75.     The ASUC Judicial Council rejected the first appeal by the Plaintiffs. On March 15,

the Judicial Council Chair Emma Ireland denied the petition, instructing Michael

Cortez-Mejia to resubmit the party registration forms electronically and resubmit

the $20 fee. Ireland stated that the Elections Council would hold an emergency

meeting that evening regarding whether to accept the party's filing materials.

76.     Plaintiff Michael Cortez-Mejia followed the instructions of the Judicial Council,

contacting Elections Council Chair Meeri Shin to resubmit the party registration

forms, and did successfully resubmit them, although Shin emphasized that the

Elections Council probably would not accept the forms, regardless. Michael Cortez-

Mejia also attempted to pay (again) the $20 filing fee at the ASUC office, although

the office staff would not accept the payment, stating that they would have to wait

until after the emergency meeting by the Elections Council.

77.     At the (first) emergency meeting of the Elections Council, convened for the

reconsideration of the Plaintiffs' filing materials, the ASUC Elections Council

voted *not to hold the meeting*. Also in attendance at this non-meeting were members

of CalSERVE, including Danielle Miguel. Like the Defend Affirmative Action

1  Party, CalSERVE was also seeking to undo the reclassification of their own

2  candidates as independents, and Danielle Miguel was also seeking to resubmit her

3  filing materials. After the Elections Council voted not to hold the emergency

4  meeting, a CalSERVE representative protested and declared that CalSERVE would

5  appeal to the Judicial Council. (On March 15 at 12:30am, the Elections Council had

6  sent an email to candidates notifying them of an emergency meeting of the

7  Elections Council to be held at 1:30am. The meeting which was obviously set up to

8  notify as few students as possible was held from 1:30am until late into the

9  night/early morning. See EXHIBIT I.)

10 78. The Election Committee non-meeting was followed by the Mandatory Candidates

11  Meeting. The three main functions of the Mandatory Candidates meeting are (1) to

12  give the Elections Council the opportunity to review the election rules and

13  procedures; (2) to establish the order of parties and candidates on the election

14  ballot; and (3) to give each party the opportunity to determine the order of their

15  senatorial candidates on the ballot to maximize the parties' chances of winning one

16  or more seats. At the onset of this meeting, a representative from the Elections

17  Council announced that each candidate would be required to resubmit how they

18  wished to be named on the ballot, their party affiliation, and the office(s) they were

19  seeking in accordance with ASUC By-Law 4202 § 4.3.

20 79. Both the ASUC Election By-Laws and past practice establish that a particular

21  moment during the candidates meeting shall be designated as the "point of no

22  return." Prior to the "point of no return," candidates and parties are given complete

23

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1  latitude to alter what position(s) they are running for and which party they chose to

2  affiliate with. (See Declaration of Yvette Felarca.)

3  80.  The party signatory is given the same latitude as the candidates to finalize the

4  party's slate and ordering of candidates:  "The party signatory or the deputy party

5  signatory must attend the Mandatory Elections Meeting and all regulations which

6  apply to candidates at the meeting shall apply to the party signatory or deputy party

7  signatory in attendance ... ". EXHIBIT H (ASUCBL 4202 § 4.7). It states further:

8  "A party may withdraw their Party Endorsement Form until the point of no return...

9  If a party withdraws then all candidates for that party shall be classified as

10  independents." EXHIBIT H (ASUCBL 4202 § 4.9).

11  81.  At the onset of the Mandatory Candidates Meeting, all Defend Affirmative Action

12  Party candidates submitted their individual names as they wished to be listed on the

13  ballot and the office(s) that each candidate was seeking to the Elections Council,

14  and Michael Cortez-Mejia, acting in his capacity as the Defend Affirmative Action

15  Party signatory, resubmitted the party Endorsement Form and the twenty-dollar

16  filing fee to an Elections Council official. During the eighteen years of the Defend

17  Affirmative Action Party's existence as a registered party, the Elections Council has

18  always accepted party Endorsement Forms and filing fees at the candidates' meeting

19  so long as they are handed in before the point of no return. (See Declaration of

20  Yvette Felarca.)

21  82.  In response to the Plaintiffs' effort to resubmit their forms at the Mandatory

22  Candidates Meeting, one Elections Council member argued for the Council to

23  accept DAAP's forms and fees. Another stated that the Elections Council would

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575
21

need to confer before doing so. After a long private meeting the Elections Council announced that they would convene a (second) emergency meeting—to be conducted in the middle of the candidates meeting—to reconsider the appeals of CalSERVE, Danielle Miguel and the Defend Affirmative Action Party prior to the "point of no return."

83. The actual emergency meeting was a perfunctory farce, at which the Elections Council decided—with only one member actually voting—to confirm the official party status of CalSERVE and accept the registration forms of Danielle Miguel, while simultaneously rejecting any party status and refusing to accept the registration forms of the Defend Affirmative Action Party. The Elections Council members gave no reasoning for their actions, laid no legal foundation, had restricted any public comment to only ten minutes with one minute per speaker, and with the exception of the sole voting member did not even participate at all. They did not give—because they could not give—a single reason why they should not accept the filing materials of the Defend Affirmative Action Party according to their own By-Laws. Instead, insofar as the Defend Affirmative Action Party was concerned, the Elections Council behaved with the presumption that they could ignore their By-Laws to render any decision that they wished, and in their near-total majority rendered this decision in silent acquiescence as though their appearance of passivity might absolve them from their wrongdoing.

84. Insofar as there were factual differences between the case of the Plaintiffs versus the cases of CalSERVE and its candidate Danielle Miguel, those differences favored the Defend Affirmative Action Party. (The Defend Affirmative Action

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1        Party, however, conducted itself in a principled and non-partisan manner, defending

2        the rights of CalSERVE and Danielle Miguel to be included on the ballot, as well.)

3        Danielle Miguel had failed to submit her registration form on time because she

4        neglected to click the "submit" button on the ASUC webpage—the Plaintiffs, on the

5        other hand, had attempted to register online, had then registered in person at the

6        ASUC office, had maintained regular contact with the Elections Council to ensure

7        that their filing was made completely and correctly, and then proactively sought and

8        received personal confirmation from the ASUC office prior to the deadline. In the

9        case of CalSERVE as a party, their party faced the legal question of whether it was

10       permissible to include the use of "Cal" in their party name—there was no such legal

11       issue facing the Defend Affirmative Action Party.

12    85.    Given that the Defend Affirmative Action Party had, in fact, a stronger case for

13        reinstatement than did either CalSERVE or its candidate Danielle Miguel, the only

14        substantive difference that can explain the disparity in outcomes is the *sharp*

15        *difference in viewpoint* between the Defend Affirmative Action Party versus

16        CalSERVE/Danielle Miguel. Over the past year, that difference in viewpoint was

17        most clearly expressed by an ongoing conflict between members of both parties

18        regarding the prosecution of *rapists* on campus. The Defend Affirmative Action

19        Party defends the rights of women survivors of rape and sexual assault to speak out

20        and publicly name the men who raped them, and the party's candidates include

21        Plaintiffs Aarefah Mosavi and Stephanie Garcia, two such survivors who have

22        become campus heroes for their fights to win justice. The Defend Affirmative

23        Action Party also calls for the expulsion of rapists from the campus.

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

86.     Members of CalSERVE, however, have expressed precisely the opposite viewpoint. CalSERVE member and former Director of the ASUC Sexual Assault Commission publicly, Meghan Warner denounced Plaintiff Stephanie Garcia for speaking out against her rapist. Warner referred online to Garcia's activism as being "overly aggressive" and "disgusting." See EXHIBIT J. CalSERVE's current ASUC senator and presidential candidate, Sheena Paul, posted on her Facebook wall in November 2015, "Trigger warning: sexual violence, BAMN is currently on sproul (sic) disturbingly exploiting sexual violence as a tool for political momentum. Im (sic) sorry for all the survivors that this is hurting." See EXHIBIT K. The CalSERVE-based Student Advocate had also acted to defend Garcia's rapist, Omar Pedroza (who not only had his own private attorney for his defense, but had also admitted to the rape), at the formal hearings regarding the issue of Pedroza's expulsion. (See Declarations of Angela Dancev, Julia Osborne and Stephanie Nicole Garcia.) With CalSERVE members vocally opposing women who speak out against their rapists—specifically opposing the actions of Plaintiff Stephanie Garcia—and actively opposing the expulsion of rapists from the campus, the difference in viewpoints between CalSERVE and the Defend Affirmative Action Party have become glaringly pronounced.[3]

87.     The differences between the political views of CalSERVE members versus those of the Defend Affirmative Action Party were well-known to the representatives on the ASUC and the officials on the ASUC Elections Council and Judicial Council.

---

88.     After the vote (if it can justly be called a vote) by the Elections Council at the emergency meeting, the Plaintiffs announced their intention to petition for an appeal from the Judicial Council, whose Chair Emma Ireland was present at the emergency meeting. However, Judicial Council Chair Emma Ireland behaved in an inappropriate and prejudicial manner, flatly refusing the request for appeal prior to its formal submission and prior to any vote by the Judicial Council as a whole. Seeming to extend an olive branch (or just to avoid culpability), Elections Council Chair Meeri Shin and the Attorney General Alek Klimek, neither of whom had voted in the emergency meeting, declared that they would not defend the Elections Council against an appeal and would instead plead "no contest" to the Plaintiffs' charges. But Judicial Council Chair Emma Ireland insisted that the Elections Council should not plead "no contest," and evasively claimed that the Judicial Council might not even have jurisdiction to hear an appeal in this case.

89.     On March 16, the Defend Affirmative Action Party formally resubmitted its petition for an appeal to the ASUC Judicial Council. Chair Emma Ireland recused herself from making any decision on the case, but stated in an email to Michael Cortez-Mejia that she would "still be orchestrating the procedural and administrative details." See EXHIBIT S, p. 2 (email exchange between Cortez-Mejia and Ireland). As was declared by Meeri Shin after the emergency meeting, the Elections Council waived its right to a hearing and did not contest the charges by the Defend Affirmative Action Party. See EXHIBIT L (waiver of rights by Elections Councilmember and Defendant Zhenrong (Jen) Shi).

90.    On March 17, the Judicial Council voted on whether to grant a hearing to the Defend Affirmative Action Party—with a split vote, 3-3, the Judicial Council did not grant a hearing to the Plaintiffs. The dissenting members of the Judicial Council asserted that the Plaintiffs' petition was "in bad faith," asserted that the Plaintiffs had no grounds for an appeal having failed to register on time, and asserted that there were no grounds on which the Elections Council could be required to reverse its decision.

91.    On Monday, March 28, 2016 the Elections Council took further action to disenfranchise, harass, discriminate against and politically censor DAAP candidates. They initiated a new offensive to misrepresent or exclude the identity of DAAP candidates, and to deprive DAAP candidates of the right to present their political viewpoints. They did this by changing the names of DAAP candidates and eliminating the pictures and candidate statements of several DAAP candidates from the ASUC Voting Guide, beginning with DAAP presidential candidate and party signatory Michael Cortez-Mejia. (See Declarations of Michael Cortez-Mejia, Aarefah Mosavi, Julia Osborne, Nance Murillo and Yvette Felarca.)

92.    Plaintiff Michael Cortez-Mejia had duly submitted his name, photo, and statement for the Voting Guide to the Elections Council before the March 11, 2016 5pm deadline, and received an email confirmation. See EXHIBIT M (Cortez email confirmation).

93.    However, his ballot statement and photo were excluded from the Voting Guide along with his party affiliation. See EXHIBIT N (ASUC Voting Guide).

94.   The Voting Guide is prepared by the ASUC Elections Council. It is distributed electronically to all UC-Berkeley students and is provided together with the ballot when students vote online. It is the only official compilation of all the candidates that allows voters to compare the candidates and parties to each other, and it is the only publication that is distributed to and accessible to every voter on campus.

95.   Defendant Meeri Shin sent a draft Voting Guide to all candidates, inviting candidates to correct discrepancies between what they had submitted before the deadline and what appeared in the draft. See EXHIBIT O (Email exchange of Cortez-Mejia and Shin).

96.   Cortez-Mejia notified Shin of the exclusion of his materials. But Shin refused his request to submit the materials, claiming she had not received them, going so far as to asking Cortez-Mejia to give a screenshot showing he had submitted it on time. See EXHIBIT O.

97.   Plaintiff Areefah Mosavi had also duly submitted her name, photo, and statement for the Voting Guide to the Elections Council before the March 11, 2016 5pm deadline. Because the website was glitchy and failed to accept her photo (one of many problems candidates have had with the online system), Mosavi sent her photo via email to the Elections Council before the deadline. See EXHIBIT P (Mosavi email sending photo to Elections Council). (Also see Declaration of Aarefah Mosavi.)

98.   However, the Elections Council refused to print her ballot statement, and in the draft Voting Guide sent to candidates included the photo and ballot statement of a different candidate. See EXHIBIT Q. Since then, the Elections Council has refused

1       to accept Mosavi's correct ballot statement. (Mosavi's true, submitted ballot

2       statement is reproduced in the Declaration of Aarefah Mosavi.)

3    99.     Mosavi immediately appealed the exclusion of her photo and ballot statement to

4       Defendant Meeri Shin. Shin refused to accept the photo and ballot statement, and

5       has since ignored Mosavi's requests for a response. EXHIBIT R (Email exchange

6       of Mosavi and Shin).

7   100.    The actions of the Elections Council are a continuing violation of the Elections

8       Council By-Laws, including but not limited to By-Law 4201, and of the ASUC

9       Constitution.

10   101.    DAAP candidates have been denied precious time to campaign for office because

11       the Elections Council continues to suppress the rights of free speech and free

12       association of DAAP candidates, forcing the candidates to be in an endless and

13       perpetual process of appealing Elections Council decisions to the Elections Council

14       itself and the Judicial Council.

15   102.    At every stage in this process, the members of the Defend Affirmative Action Party

16       took every reasonable action to register for the ASUC ballot. The candidates

17       attempted to register online well before the deadline, then attempted to register in

18       person at the ASUC office before the deadline, then sought and received personal

19       confirmation of their registration from the ASUC staff on the day of the deadline.

20       After being denied registration, the Defend Affirmative Action Party appealed to

21       the Judicial Council, then appealed to an emergency meeting of the Elections

22       Council (a meeting that was disbanded), then appealed at the Mandatory Candidates

23

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1       Meeting, then appealed to another emergency meeting of the Elections Council, and

2       then again appealed to the Judicial Council.

3       103.    At every stage in this process, the ASUC Elections Council and Judicial Council

4               refused to accept the continuous efforts by the Defend Affirmative Action Party

5               simply to register for the ballot. On the day of the filing deadline, the Elections

6               Council told members of the Defend Affirmative Action Party that they had

7               received all necessary filing materials, and then after the filing deadline, deceitfully

8               claimed otherwise. The Elections Council then refused, against their own By-Laws,

9               to grant an opportunity for the Plaintiffs to complete the supposedly incomplete

10              forms. The Elections Council then inexplicably provided another party and

11              candidate, CalSERVE and Danielle Miguel, with precisely the remedy that they had

12              claimed they "[could] not make any exceptions" for in the case of the Defend

13              Affirmative Action Party. The Judicial Council Chair then inappropriately made a

14              verbal refusal of appeal prior to any vote by the Judicial Council and even prior to

15              receiving any formal petition for appeal, and attempted to prevent the Elections

16              Council from waiving its right to a hearing. And the Judicial Council as a whole

17              refused even to give the Plaintiffs a hearing at which they might make their case.

18              Acting on behalf of ASUC bodies that are responsible for facilitating and

19              safeguarding a democratic process among students, the Elections Council and

20              Judicial Council instead acted to prevent any such democratic process from taking

21              place. (See attached Declarations.)

22      104.    The Plaintiffs are entitled to the equal rights and treatment that are afforded to all

23              other students, to all other student government candidates, and to all other student

24

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1    political parties at the University of California, Berkeley. The Plaintiffs have an

2    overwhelmingly strong basis for asserting those rights. Standing as equals to all

3    others who were granted party status on the ASUC ballot, the Plaintiffs have at least

4    as much merit as all others, demonstrated at least as much concern for procedure

5    and thoroughness as all others, met the necessary qualifications and adhered to all

6    By-Laws at least as well as all others did—and yet solely the Plaintiffs have been

7    denied the same rights and treatment that were granted to all others. Compared to

8    all other parties that registered and received official status on the ASUC ballot, the

9    Defend Affirmative Action Party stands apart for only two substantive reasons: (1)

10   the Defend Affirmative Action Party stands apart for its *unique political views and*

11   *program* of civil rights activism and its independent, fighting leadership; and (2) the

12   Defend Affirmative Action Party stands apart as an organization built on the

13   *leadership of women, of minorities, of immigrants, and of LGBT and working-class*

14   *and oppressed students* from many backgrounds. The ASUC Elections Council and

15   Judicial Council singled out this unique group of students by imposing separate and

16   unequal treatment, the very sort of treatment against which the Plaintiffs seek to

17   defend *all* students through their campaign for student government and through

18   their brave activism.

19                                    **COUNT ONE**
     **42 U.S.C. § 1983 (First Amendment Rights of Freedom of Association and Freedom of**
20                                       **Speech)**
                                **AGAINST ALL DEFENDANTS**
21
          105.   Plaintiff realleges each and every paragraph in this Complaint as if fully set forth
22
                 here.
23

24   ─────────────────────────────────────────────
         COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
                         CASE NO. 4:16-cv-01575
                                  30

106. The First Amendment prohibits state action that infringes upon freedom of association: "State action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *NAACP v. State of Alabama ex rel. Patterson,* 357 U.S. 449, 460-61 (1958).

107. This right of association includes the right of candidates to run with political parties in democratic elections: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively… rank among our most precious freedoms." *Williams v. Rhodes,* 393 U.S. 23, 30-31 (1968).

108. The right of freedom of association is inextricably bound with the right to freedom of speech: "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association, as this Court has more than once recognized by remarking upon the close nexus between the freedoms of speech and assembly." NAACP v. State of Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958).

109. The University of California policies treat student participation in political elections of all kinds as participation in a public forum.

110. Any infringement upon these freedoms must be justified by a compelling state interest. The Defendants have offered no interest that they claim to be protecting.

111. Defendants violated Plaintiffs' rights by the following conduct:

   a. Defendant members of the ASUC Elections Council and ASUC Judicial Council denied Plaintiffs their right to associate as members of the Defend Affirmative Action Party (DAAP) in the ASUC elections;
   b. Defendant members of the ASUC Elections Council and ASUC Judicial Council denied Plaintiffs their right to freedom of speech, by denying them their right to run on a united platform of fighting racism and sexism, fighting to increase

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575
31

underrepresented minority student enrollment at UCB, fighting rape and sexual assault at UCB, defending students' rights, and building a mass, militant student-led civil rights movement that is independent from the University administration;

c. Defendant members of the Elections Council and Judicial Council denied Plaintiffs their rights, while according those same rights to individuals similarly situated who are members of a different political party, simply on the basis of Plaintiffs' party affiliation and political viewpoints, in violation of their rights to freedom of association and freedom of speech.

d. Defendant members of the Elections Council and Judicial Council are deliberately obstructing the ability of Plaintiffs to campaign for office and gather votes, by denying them their affiliation with their party, scattering them across the ASUC ballot, by misrepresenting their political affiliation by listing them as "Independents" on the ASUC ballot, by censoring their candidate statements in the voters guide, and by censoring them from stating "DAAP" as their middle names in the voters guide and on the ballot, simply on the basis of Plaintiffs' party affiliation and political viewpoints, in violation of their rights to freedom of association and freedom of speech.

112. Defendants subjected Plaintiffs to their wrongful conduct and deprived Plaintiffs of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the Plaintiffs' rights would be violated by their acts and/or omissions.

113. The acts and omissions of Defendants were, on information and belief, known to and endorsed by Defendant Yordanos Dejen, a policy maker of the ASUC, Chancellor Nicholas Dirks, a policy maker of UCB, and President Janet Napolitano, a policy maker of the University of California.

114. The conduct of Defendants entitles Plaintiffs to exemplary damages and penalties allowable under 42 U.S.C. §1983 and California law.

115. The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. §1983 and California law.

116. Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, Cal. Code Civ. Proc. § 1021.5, and other applicable California codes and law.

**COUNT TWO**
**42 U.S.C. § 1983 (Due Process, Equal Protection)**
**AGAINST ALL DEFENDANTS**

117. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

118. Defendants, acting under the color of state law in their personal capacities, deprived Plaintiffs of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution:

   a. The right to be free from deprivation of life, liberty, and property without due process of law, as secured by the Fourteenth Amendment; and

   b. The right to Equal Protection of the Laws, and to be free from discrimination based upon race or gender, as secured by the Fourteenth Amendment.

119. Separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of, Plaintiffs' rights, Defendants violated Plaintiffs' rights by the following conduct:

   a. Denying Plaintiffs the right to run as the Defend Affirmative Action Party (DAAP).
   b. The Defendant members of the ASUC Judicial Council denied Plaintiffs an injunction protecting their right to run as DAAP, while granting members of the CalSERVE party an injunction protecting their right to run as CalSERVE, because of Plaintiffs' party affiliation and political viewpoints, in violation of Plaintiffs' rights to due process and equal protection of the law.
   c. The Defendant members of the ASUC Elections Council met secretly with members of CalSERVE to resolve issues regarding their placement on the ballot, while not meeting with Plaintiffs, because of Plaintiffs' party affiliation and political viewpoints, in violation of Plaintiffs' rights to due process and equal protection of the law.
   d. The Defendant members of the ASUC Elections Council denied Plaintiffs their right to run as DAAP on the pretext that they did not submit a form four days early and despite extensive good-faith efforts, while allowing Danielle Miguel, a candidate from the CalSERVE party, to run for office with CalSERVE after submitting her candidate form late, because of Plaintiffs' party affiliation and

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1    political viewpoints, in violation of Plaintiffs' rights to due process and equal protection of the law.

2    e.  Defendant Jonathan Morris, who had admitted his limited competence and lack of experience as a two-days member of the Elections Council at the March 15, 2016 meeting, cast the sole vote for banning DAAP from the ASUC elections, while also casting the sole vote for allowing Danielle Miguel to run, and was patently unqualified to make a distinction on the fundamental democratic rights of students, in violation of Plaintiffs' rights to due process and equal protection of the law.

f.  The Defendant members of the ASUC Elections Council denied Plaintiffs their right to run as DAAP on the basis of closed, secret agreements and without proffering any justification, in violation of their due process right to fair, open and impartial administration of the ASUC's bylaws.

g.  The Defendant members of the ASUC Elections Council who did not vote on whether to accept Plaintiffs' form, abrogated their duty to administer the ASUC bylaws and safeguard democratic rights, in violation of Plaintiffs' due process rights and equal protection of the law.

h.  The Defendant members of the ASUC Elections Council banned Plaintiffs from running with DAAP without offering any justification, in violation of Plaintiffs' rights to due process and equal protection of the law.

i.  The Defendant members of the ASUC Judicial Council denied Plaintiffs relief from the ASUC Elections Council's ban, even though Plaintiffs' petition was unopposed, without any justification and in violation of Plaintiffs' rights to due process and equal protection of the law.

j.  The Defendant members of the ASUC Judicial Council denied Plaintiffs a hearing, in violation of their due process rights and equal protection of the law.

k.  The Defendant members of the Judicial Council refused even to accept Plaintiffs' duly-submitted petition for relief from the Elections Council, without any justification, in violation of Plaintiffs' rights to due process and equal protection of the law.

l.  Defendant Emma Ireland denied Plaintiffs their request for an injunction against the Elections Council, and illegally conditioned their demand for a hearing on an unnecessary delay in getting a remedy, while simultaneously a member of the Defendant Elections Council, in a direct conflict of interest that denied Plaintiffs their rights to due process and equal protection of the law.

m.  The Defendant members of the ASUC Elections Council and ASUC Judicial Council denied the right to equal protection by denying Plaintiffs their rights because they are comprised mostly of minorities and women and are committed to organizing mass, independent action to fight racism, sexism, including the exclusion of underrepresented minority students from UCB and sexual assault and rape.

n.  Defendant members of the Elections Council and Judicial Council are deliberately obstructing the ability of Plaintiffs to campaign for office and gather votes, by denying them their affiliation with their party, scattering them across the ASUC ballot, and by misrepresenting their political affiliation by listing them as

"independents" on the ASUC ballot, because of Plaintiffs' party affiliation and political viewpoints and in violation of their right to equal protection.

120.   Defendants subjected Plaintiffs to their wrongful conduct and deprived Plaintiffs of rights described herein knowingly, maliciously, and with conscious and reckless disregard for whether the Plaintiffs' rights would be violated by their acts and/or omissions.

121.   The acts and omissions of Defendants were, on information and belief, known to and endorsed by Defendant Bejen, a policy maker of the ASUC, Chancellor Nicholas Dirks, a policy maker of UCB, and President Janet Napolitano, a policy maker of the University of California.

122.   The conduct of Defendants entitles Plaintiffs to exemplary damages and penalties allowable under 42 U.S.C. §1983 and California law.

123.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. §1983 and California law.

124.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, Cal. Code Civ. Proc. § 1021.5, and other applicable California codes and law.

**COUNT THREE**
**Violation of the California Constitution**
**AGAINST ALL DEFENDANTS**

125.   Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

126.   Through their actions, omissions, customs, and policies as described above, all Defendants, acting in concert/conspiracy as described above, violated the rights, protected by the California Constitution, of Plaintiffs, including but not limited to the following:

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

a. The right to freedom of speech as secured by the California Constitution, Article 1, § 2.

b. The right to equal protection of the laws as secured by the California Constitution, Article 1, § 7.

c. The right to due process as secured by the California Constitution, Article 1, § 7.

127. As a direct and proximate result of Defendants' violation of the Plaintiffs' rights under the California Constitution, Plaintiffs sustained injuries and damages, and are entitled to relief, including compensatory damages and penalties, and attorneys' fees and costs. As against the individual Defendants, Plaintiffs are entitled to punitive damages.

**COUNT FOUR**
**20 U.S.C. § 1681**
**(Violation of Title IX of the Education Amendments of 1972)**
**AGAINST DEFENDANTS REGENTS OF THE UNIVERSITY OF CALIFORNIA, UNIVERSITY OF CALIFORNIA AT BERKELEY, ASSOCIATED STUDENTS OF THE UNIVERSITY OF CALIFORNIA**

128. Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

129. Title IX was enacted to combat "the continuation of corrosive and unjustified discrimination against women in the American educational system." 118 Cong. Rec. 5803 (1972).

130. Upon information and belief, the Defendants Regents of the University of California, University of California at Berkeley, and Associated Students of the University of California receive federal financial assistance and are subject to 20 U.S.C. § 1681. They are within the mandate that "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

131.   As described above, Plaintiffs were targeted because of their protected activity under Title IX, demanding the enforcement of Title IX's mandates to take action against sexual harassment and violence and to combat the prevailing hostile environment for women students and other targets of sexual harassment and violence.

132.   The adverse actions against Plaintiffs would act to dissuade a reasonable person in Ms. Mosavi's position from making a charge of discrimination.

133.   In doing the things alleged herein, Defendants' conduct was appalling and the Defendant acted towards Plaintiff with malice, oppression and fraud and a willful and conscious disregard of Plaintiff Mosavi's rights. As a direct and proximate result of Defendants' violation of Title IX, Plaintiffs suffered serious damages, penalties, costs and attorney's fees as set forth in ¶¶ 140-141 above.

### COUNT FIVE
**California Government Code §§ 11120-11132 (Bagley-Keene Open Meeting Act)**
**AGAINST DEFENDANT MEMBERS OF THE ASUC ELECTIONS COUNCIL**
**(MEERI SHIN, JONATHAN MORRIS, ALEX KLIMEK, SHOUJIT BANERJEE, JERRY CHIANG, JON REY, LINSHA QI, ZHENRONG (JEN) SHI, VIVIAN ZHU, AND SELENA KIM)**

134.   Plaintiff realleges each and every paragraph in this Complaint as if fully set forth here.

135.   The Bagley-Keene Open Meeting Act ("the Act") states: "The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created."

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

136.   No one on the Elections Council made any comments during this meeting, and one member of the Council, Defendant Jonathan Morris, cast the sole vote in these two opposite "votes."

137.   The March 15, 2016 meeting of the Elections Council violated the Open Meeting Act. After ten minutes of public comment, in which all speakers spoke in favor of allowing candidates to run for office with their parties, and after no commentary by members of the Elections Council, the Council voted to disallow Plaintiffs to run with DAAP while allowing other candidates to run with CalSERVE, after no comment and without any justification.

138.   Even after faced with an appeal to the ASUC Judicial Council, Defendant members of the Elections Council refused to meet their obligation of giving any justification for their arbitrary and discriminatory decisions.

139.   The meeting evinced a secret agreement by members of the Elections Council to not to allow DAAP candidates to run for office because of their political affiliation and viewpoint..

140.   As a direct and proximate result of Defendants actions, Plaintiffs sustained injuries and damages, and are entitled to relief as set forth in the Act.

**JURY DEMAND**

141.    Plaintiffs request trial by a jury on all of Plaintiffs' claims.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief against the Defendants herein, jointly and severally:

1.   Injunctive relief, including but not limited to the following:

COMPLAINT FOR DAMAGES, PENALTIES, AND INJUNCTIVE RELIEF
CASE NO. 4:16-cv-01575

1

2
     a.  A temporary restraining order and/or temporary and permanent injunction ordering Defendants to allow Plaintiffs to run as members of the Defend Affirmative Action Party (DAAP), to be listed in the student voters guide and on the ballot for ASUC elections as such, and to postpone the ASUC elections scheduled for April 4-6, 2016 until these violation of Plaintiffs' rights are corrected

3

4

5
2.  Compensatory and exemplary damages for emotional harm and violation of Plaintiffs' rights, in an amount according to proof and which is fair, just, and reasonable, and punitive damages against the individual Defendants under 42 U.S.C. § 1983 and California law in an amount according to proof and which is fair, just, and reasonable, together amounting to $250,000;

6

7

8
3.  All other damages, treble damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; 29 U.S.C. § 794a; California Civil Code § 3294; California Code of Civil Procedure § 1021.5; and as otherwise may be allowed by California and/or federal law;

9

10

11
4.  Such other and further relief as supported by the evidence in this case and as this Court and/or the jury may deem appropriate.

12

13
By Plaintiffs' Attorneys,
UNITED FOR EQUALITY AND AFFIRMATIVE ACTION LEGAL DEFENSE FUND

14

15
BY:    /s/ Ronald Cruz
Ronald Cruz (State Bar No. 267038)
Shanta Driver* (Michigan Bar No. P65007)

16
1985 Linden Street
Oakland, CA 94607

17
(510) 875-4463
Fax: (313) 586-0089

18
*Pro hac vice application pending

19
Dated: March 30, 2016

20

21

22

23

24