1  DON WILLENBURG (SBN: 116377)
   FLETCHER ALFORD (SBN: 152314)
2  GORDON & REES LLP
   1111 Broadway, Suite 1700
3  Oakland, CA 94607
   Telephone: (510) 463-8600
4  Facsimile:  (510) 984-1721
   dwillenburg@gordonrees.com
5  falford@gordonrees.com
   Attorneys for Specially Appearing Defendants
6  The Regents of the University of California, President Janet Napolitano,
   and Chancellor Nicholas B. Dirks
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 DEFEND AFFIRMATIVE ACTION      ) CASE NO. 3:16-cv-01575-VC
   PARTY, et al.                  )
12                                ) **RESPONSE TO ORDER TO**
                      Plaintiffs, ) **SHOW CAUSE re PRELIMINARY**
13                                ) **INJUNCTION; SUPPORTING**
        vs.                       ) **DECLARATION OF JAMIE R.**
14                                ) **RILEY**
   REGENTS OF THE UNIVERSITY OF   )
15 CALIFORNIA,  et al.            ) Hearing:
                                  ) Date: May 4, 2016
16                    Defendants. ) Time: 10:00 a.m.
                                  ) Judge Vince Chhabria
17                                )
                                  )
18 ─────────────────────────────  )

19                              I

20                        INTRODUCTION

21         No injunction should issue against The Regents of the University of California,

22 President Janet Napolitano, and Chancellor Nicholas B. Dirks, specially appearing herein

23 without waiver of any defenses or immunities to suit ("Specially Appearing Defendants")

24 and hereby responding to this Court's April 6 order to show cause (Dkt 26). Specially

25 Appearing Defendants neither conduct nor police ASUC elections, and were uninvolved

26 in this one until being sued. Specially Appearing Defendants do not see any reason for

27 injunctive relief, or any sensible form such relief would take, particularly given that the

28

RESPONSE TO OSC RE PRELIMINARY INJUNCTION

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

election is now over. In any event, Specially Appearing Defendants should not be compelled or restrained by injunction in this matter.

## II

### FACT UPDATE: ELECTION RESULTS ARE IN.

The election took place last week. According to the Daily Cal:

Sheena Paul, CalSERVE's presidential candidate and runner up, won 2,965 votes, about 32 percent of the votes dispersed among the five presidential candidates, as compared with the 4,798 votes that [winning candidate, from the Student Action party] Morrow received. Andrea Rose, the human proxy for SQUELCH's satirical presidential candidate Kira the Husky, came in third, winning 988 votes, or about 11 percent.

Independent presidential candidate James Bacon and Michael Cortez-Meijia, who is affiliated with the Defend Affirmative Action Party, won 344 and 274 votes, respectively.

[¶¶] Student Action executive officers-elect Lao, Luu and McGinley, shed joyful tears as other spectators cheered and chanted as results were revealed. After redistribution, Lao and Luu came out more than 1,000 votes ahead of their respective second-place opponents — CalSERVE candidates Wes Adrianson and Boomer Vicente, while McGinley won against Kathy Tran by 881 votes. DAAP executive candidates Thomas Moore, Aarefah Mosavi and Nancy Murillo each gathered approximately 500 votes.

http://www.dailycal.org/2016/04/09/student-action-sweeps-4-partisan-executive-seats-gains-senate-majority/.

## III

### ARGUMENT

**A.    Specially Appearing Defendants do not belong in this lawsuit.**

The complaint and the evidence submitted thus far make clear that Plaintiffs are focused on the actions of ASUC members and that this is an intra-student dispute.  There

-2-

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

are no allegations that any of Specially Appearing Defendants was involved in any of the complained-of acts. Plaintiffs do make perfunctory, apparently boilerplate allegations, "on information and belief," that the actions of the ASUC defendants were "known to and endorsed by" University officials Napolitano and Dirks. Dkt. 2, p. 32 ¶ 113, p. 34-35, ¶121. But the complaint contains no facts (or even reasonable inferences) to indicate that even such a limited role is the case. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

Further, none of the many declarations submitted in support of Plaintiffs' motion for temporary restraining order asserts any facts supporting the "known and endorsed" allegation or explaining what is meant by it. Nor do any of the declarations or other documents Plaintiffs submitted with their complaint show that Specially Appearing Defendants:

- Were involved in any of the challenged actions about political party designations on the ASUC ballot;
- Are regularly involved in decisions about political party designations on the ASUC ballot; or
- Have the authority to order the ASUC to cancel an election, or to invalidate an election that has taken place.

Yes, there is a relationship between the University and ASUC. Yes, the University opposes viewpoint discrimination, and supports inclusionary policies and practices. But they do not run ASUC elections, and they did not run this one.  The Specially Appearing Defendants do not belong in this lawsuit, and should not be subjected to injunctive relief.

Question 3 in this Court's order to show cause goes directly to this point:

What role, if any, do the University of California and its officers play in holding ASUC elections or recognizing ASUC's elected officers? If the plaintiffs satisfy

-3-

the prerequisites for preliminary injunctive relief, should an injunction be limited to ASUC or its officers? If not, what kind of injunctive relief would be appropriate against the University or its officers?

The answer: Specially Appearing Defendants play no role in holding ASUC elections. None of Specially Appearing Defendants "conduct" the elections. ASUC is an independent organization. www.asuc.org. Neither the Chancellor, nor the President, nor the University controls ASUC's elections, or the selection of candidates, or the content of ballot materials.

The very point of student government is to allow the students to govern themselves. University over-involvement in the details of student government is contrary, potentially antithetical, to the educational function of student government. There are many rules and regulations related to student elections and it is up to the students to conduct them. https://asuc.org/elections/.

The University does "recognize" elected officers, in that ASUC officers represent students on administrative campus committees, and provide a variety of services to students at on-campus facilities. The University does not independently "vet" such officers, and instead relies on the ASUC to govern itself in that regard.

For this and other reasons, if there is any injunctive relief awarded, it should not be against Specially Appearing Defendants. No form of injunctive relief would be appropriate against the University or its officers. If the Court ordered the University to not "recognize" the election that has already happened, what result would that have? What form would that take? Should the University not allow meetings of the newly elected ASUC to take place in campus buildings?  Or only allow meetings of the pre-election ASUC senate and executive officers -- despite the fact that their party was largely swept out by a competing party in the election? Should the University committees on which ASUC has representatives require that present representatives remain in office – a form of involuntary servitude that disenfranchises thousands of students – or proceed without any student representatives until some new election were held? Should the

-4-

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1  University cease cooperating with ASUC with respect to the student bookstore or other

2  commercial activities? Each of these options would cause more problems than it would

3  solve.

### B.  Other Issues Identified in April 6 Order

5  Question 1 asks whether "ASUC or its officers engaged in viewpoint

6  discrimination against DAAP or its members" and related questions.  Specially

7  Appearing Defendants do not presently have evidence bearing on this question, given

8  their uninvolvement with the matter prior to receiving the TRO papers on March 31.

9  Question 2 of this Court's order asks what authority exists to order a new election,

10  and about alternative relief. Specially Appearing Defendants do not presently have

11  information or a position on this question.

12  Question 4 asks if the Court should hold an evidentiary hearing. Specially

13  Appearing Defendants do not believe that there is a need for further evidence on the main

14  issue affecting them: that Specially Appearing Defendants do not conduct ASUC's

15  elections or play a role in determining ballot wording.

### C.  Issues In Addition to those Identified in April 6 OSC

#### 1.  Eleventh Amendment immunity.

18  "The Judicial power of the United States shall not be construed to extend to any

19  suit in law or equity, commenced or prosecuted against one of the United States by

20  Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const.

21  amend. XI. Because the Eleventh Amendment reflects a fundamental principle of state

22  sovereign immunity, it has been read broadly as barring not only those federal suits

23  against a state by a citizen of another sovereign, but also federal suits brought against the

24  state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890).

25  The University of California system is created under Article IX, sec. 9 of the

26  California Constitution, and entrusted to be governed by the Board of Regents.  It has

27  long been recognized that The Regents is an "arm of the state" entitled to Eleventh

28  Amendment immunity. *Jackson v. Hayakawa*, 682 F.2d, 1344, 1350 (9th Cir. 1982)

-5-

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

("the University of California and the Board of Regents are considered to be instrumentalities of the state for purposes of the Eleventh Amendment"). This Eleventh Amendment immunity bars Plaintiffs' injunctive and declaratory relief claims brought against The Regents. Eleventh Amendment immunity applies to suits "in which the State or one of its agencies or departments is named as the defendant and applies regardless of the nature of the relief sought, including suits for declaratory or injunctive relief." *Freedom From Religion Found., Inc. v. Geithner*, 715 F.Supp.2d 1051, 1057 (E.D. Cal. 2010) (citations omitted); *Papasan v. Allain*, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939, 92 L. Ed. 2d 209 (1986) ("This bar exists whether the relief sought is legal or equitable.").

### 2.      Plaintiffs have other unexplored possible remedies.

Plaintiffs ask this Court for relief without having utilized any available on-campus remedies. If a student has a complaint about a service on campus, he or she may file a formal grievance with the Office of Student Affairs. Division of Student Affairs Berkeley Campus Student Grievance Procedure, exhibit A to the accompanying Declaration of Jamie R. Riley in Support of Specially Appearing Defendants' Response to OSC Re Preliminary Injunction ("Riley Decl."); University of California Policy Applying to Campus Activities, Organizations and Students (PACAOS), section 110.00, Policy on Student Grievance Procedures, attached as exhibit B to the Riley Decl.

Pursuant to the Student Grievance Procedures, before filing a grievance, "a student should attempt to resolve the matter informally with the person alleged to have committed the violation, or with the head of the department or unit in which the alleged violation occurred, or both of them." Student Grievance Procedures, section III(A). Further, where the department or unit in which the violation allegedly occurred has written procedures for student grievances, students should first attempt to resolve the matter through those procedures…within sixty (60) days of from the time at which the student knew or could reasonably be expected to have known of the action being grieved." Student Grievance Procedures, section III(B). "If the department or unit fails to

RESPONSE TO OSC RE PRELIMINARY INJUNCTION

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

1  provide a notice of resolution to the student within sixty (60) days of receiving the

2  complaint… or if the student is not satisfied with the outcome of the departmental level

3  resolution, the student may file a formal student grievance within ten (10) days of notice

4  of the outcome of the department level process." *Id.* at section IV(A). "Where there is no

5  unit or departmental grievance procedure, a student may file a formal student grievance

6  within sixty (60) days of from the time at which the student knew or could reasonably be

7  expected to have known of the action being grieved." *Id.*

8      Here, the ASUC, as a unit or department within the meaning of these rules, has its

9  own procedures for challenging student elections. The proper procedures for Plaintiffs to

10  challenge the election are set forth in ASUC Bylaw 4304 pertaining to Recall Elections.

11  Riley Decl., exh. C. If Plaintiffs are not granted their requested remedy via the ASUC

12  Recall Election procedures, their next step would be to file a formal grievance with the

13  Office of Student Affairs. Since Plaintiffs have not even attempted to pursue these

14  avenues, they cannot show irreparable injury and no preliminary injunction.

15                          **IV**

16                     **CONCLUSION**

17      For all the foregoing reasons, and others as may be advanced by counsel or appear

18  to the Court at the hearing, the Court should not issue injunctive relief against Specially

19  Appearing Defendants.

20                          Respectfully submitted,

21
   Dated: April 15, 2016          GORDON & REES LLP
22                                 By:    /s/Don Willenburg
23                                 DON WILLENBURG (SBN: 116377)
                                   FLETCHER ALFORD (SBN: 152314)
24                                 dwillenburg@gordonrees.com
                                   Attorneys for Specially Appearing Defendants The
25                                 Regents of the University of California, President
                                   Janet Napolitano, and Chancellor Nicholas B. Dirks
26                                 1111 Broadway, Suite 1700
                                   Oakland, CA 94607
27                                 Telephone: (510) 463-8600
                                   Facsimile: (510) 984-1721
28

-7-

RESPONSE TO OSC RE PRELIMINARY INJUNCTION

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

### DECLARATION OF DR. JAMIE R. RILEY, PhD

I, Jamie R. Riley, declare as follows:

    1. I am Assistant Dean of Students at the University of California in Berkeley. In this capacity I have personal knowledge of matters related to the processing of student complaints about activities on campus, about the relationship between the University and the student government on campus, the Associated Students of the University of California ("ASUC"), and all other matters contained in this declaration.

    2.  Attached as exhibit A is a true and correct copy of the Division of Student Affairs Berkeley Campus Student Grievance Procedure.

    3.  Attached as exhibit B is a true and correct copy of the University of California Policy Applying to Campus Activities, Organizations and Students (PACAOS), section 110.00, Policy on Student Grievance Procedures.

    4.  Attached as exhibit C is a true and correct copy of ASUC Bylaw 4304 pertaining to Recall Elections.

    5.  ASUC election contests are not infrequent. The University does not get involved (if at all) absent the filing of a complaint pursuant to an applicable campus process. In such case, an investigation would probably be conducted. Invalidation of an election by the University would not be the likely outcome of a finding of a campus policy violation related to an election conducted by the students with regard to their own student government organization. To my knowledge, no such complaint has been filed in connection with the acts complained of in DAAP's complaint.

    I declare under penalty of perjury the foregoing is true and correct, and that this declaration was executed in Berkeley, California.

Dated: April 15, 2016

Jamie R. Riley, PhD

27640844v.1

-8-

# EXHIBIT A

**University of California Policy PACAOS-110**



# Policies Applying to Campus Activities, Organizations and Students (PACAOS)

## 110.00 POLICY ON STUDENT GRIEVANCE PROCEDURES

| | |
|---|---|
| **Responsible Officer:** | VP - Student Affairs |
| **Responsible Office:** | SA - Student Affairs |
| **Issuance Date:** | 5/17/2002 |
| **Effective Date:** | 5/17/2002 |
| **Scope:** | For all pertinent activities involving University students, employees, and properties, the *Policies Applying to Campus Activities, Organizations and Students* apply to the Division of Agriculture and Natural Resources and to the Department of Energy Laboratories operated by the University of California, subject to Laboratory implementing regulations and contractual obligations between The Regents and the Department of Energy. |

| | |
|---|---|
| **Contact:** | Eric Heng |
| **Email:** | Eric.Heng@ucop.edu |
| **Phone #:** | (510) 987-0239 |

## I.    POLICY SUMMARY

The *Policies Applying to Campus Activities, Organizations and Students* are a compendium of University-wide policies relating to student life.  Section 110.00 describes the University's policy on student grievance procedures.

## II.    DEFINITIONS

Definitions for the *Policies Applying to Campus Activities, Organizations and Students*, and the campus implementing regulations adopted pursuant to them, are provided in Section 14.00.

University of California Policy PACAOS-110

## III.   POLICY TEXT

## 110.00 POLICY ON STUDENT GRIEVANCE PROCEDURES

### 111.00

Chancellors shall develop and submit for approval by Student Academic Services in the Office of the President, and in consultation with the Office of the General Counsel, procedures to resolve grievances claiming to have been the subject of any of the following types of University action:

### 111.10

Violation of the privacy rights accorded by the Federal Family Educational Rights and Privacy Act of 1974, portions of the State of California Education Code, and the *Policies Applying to the Disclosure of Information from Student Records* (see Section 130.00);

### 111.20

Discriminatory practices based upon sex, under Title IX of the Education Amendments of 1972 or applicable federal or state laws, or under the *Student-Related Policy Applying to Nondiscrimination on the Basis of Sex* (see Section 150.00) and the *Policy on Sexual Harassment and Complaint Resolution Procedures* (see Section 160.00);

### 111.30

Discriminatory practices based upon disability, under Section 504 of the Rehabilitation Act of 1973 or the Americans with Disabilities Act of 1990 or under the *Guidelines Applying to Nondiscrimination on the Basis of Disability* (see Section 140.00);

### 111.40

Discriminatory practices based upon race, color, or national origin, under Title VI of the Civil Rights Act of 1964; and

### 111.50

Other types of actions that may be grieved, such as discrimination on the basis of sexual orientation, age, or marital status, as specified in campus regulations.

### 112.00

Campus student grievance procedures shall be developed with student consultation, and shall at a minimum meet the requirements of applicable federal anti-discrimination

University of California Policy PACAOS-110

and privacy laws. Once adopted, they shall serve as the sole remedy within the University for nonacademic student grievances brought pursuant to any such law.

## 113.00

As provided in state law, civil or criminal law remedies including injunctions, restraining or other court orders, and monetary damages also may be available to complainants.

## 114.00

Assignment of grades to students enrolled in University classes is the exclusive prerogative of University faculty. Grade-related and other academic grievances are covered under separate policies established in consultation with the Academic Senate.

## IV.    COMPLIANCE / RESPONSIBILITIES

Chancellors shall adopt campus implementing regulations consistent with these *Policies*. The University shall publish these *Policies* and make them widely available, and Chancellors shall do the same with respect to the implementing regulations for their campuses. This requirement may be satisfied through the on-line publication of these *Policies* and their respective campus implementing regulations. (See also Section 13.20 of these *Policies*.)

## V.    PROCEDURES

The President shall consult as appropriate with Chancellors, Vice Presidents, the Office of the General Counsel, and Universitywide advisory committees prior to amending these *Policies*. Chancellors shall consult with faculty, students, and staff prior to submitting to the President any campus recommendations related to proposed amendments to these *Policies*. Amendments that are specifically mandated by law, however, do not require consultation with campus representatives or Universitywide advisory committees to the extent that legal requirements do not permit such consultation. (See also Section 13.10 of these *Policies*.)

Chancellors shall consult with students (including student governments), faculty, and staff in the development or revision of campus implementing regulations except when the development or revision of such regulations results from changes to these *Policies* that have been specifically mandated by law. Campuses shall specify procedures, including consultation processes, by which campus implementing regulations may be developed or revised. (See also Section 13.30 of these *Policies*.)

Prior to their adoption, all proposed campus implementing regulations, including all

University of California Policy PACAOS-110

substantive modifications to existing such regulations, shall be submitted to the Office of the President for review, in consultation with the Office of the General Counsel, for consistency with these *Policies* and the law. (See also Section 13.40 of these *Policies.*)

## VI.    RELATED INFORMATION

See also *Policies Applying to Campus Activities, Organizations and Students* sections:

10.00        Preamble and General Provisions

11.00        Authority

12.00        Applicability

13.00        Development and Review of Universitywide Policies and Campus Implementing Regulations

14.00        Definitions

## VII.   FREQUENTLY ASKED QUESTIONS

Not applicable

## VIII.  REVISION HISTORY

Original issuance September 1, 1970
Revised October 29, 1973
Revised July 21, 1978
        Effective January 3, 1979
Revised October 31, 1983
Revised August 15, 1994
Revised May 17, 2002
Reformatted June 1, 2012 into the standard University of California policy template

# EXHIBIT B

University of California PACAOS-30

# Policies Applying to Campus Activities, Organizations and Students (PACAOS)



## 30.00 POLICY ON SPEECH AND ADVOCACY

| | |
|---|---|
| **Responsible Officer:** | VP - Student Affairs |
| **Responsible Office:** | SA - Student Affairs |
| **Issuance Date:** | 7/28/2004 |
| **Effective Date:** | 7/28/2004 |
| **Scope:** | For all pertinent activities involving University students, employees, and properties, the *Policies Applying to Campus Activities, Organizations and Students* apply to the Division of Agriculture and Natural Resources and to the Department of Energy Laboratories operated by the University of California, subject to Laboratory implementing regulations and contractual obligations between The Regents and the Department of Energy. |

| | |
|---|---|
| **Contact:** | Eric Heng |
| **Email:** | Eric.Heng@ucop.edu |
| **Phone #:** | (510) 987-0239 |

## I.    POLICY SUMMARY

The *Policies Applying to Campus Activities, Organizations and Students* are a compendium of University-wide policies relating to student life. Section 30.00 describes the University's policy on speech and advocacy.

## II.    DEFINITIONS

Definitions for the *Policies Applying to Campus Activities, Organizations and Students*, and the campus implementing regulations adopted pursuant to them, are provided in Section 14.00.

**University of California PACAOS-30**

## III.   POLICY TEXT

## 30.00 POLICY ON SPEECH AND ADVOCACY

**30.10**

The University is committed to assuring that all persons may exercise the constitutionally protected rights of free expression, speech, assembly, and worship.

**30.20**

It is the responsibility of the Chancellor to assure an ongoing opportunity for the expression of a variety of viewpoints.

**30.30**

The time, place, and manner of exercising the constitutionally protected rights of free expression, speech, assembly, and worship are subject to campus regulations that shall provide for non-interference with University functions and reasonable protection to persons against practices that would make them involuntary audiences or place them in reasonable fear, as determined by the University, for their personal safety.

**30.40**

The University recognizes, supports, and shall not abridge the constitutional rights of faculty, students, or staff to participate, either as individuals or as members of a group, in the political process of supporting candidates for public office or any other political activity.

## IV.   COMPLIANCE / RESPONSIBILITIES

Chancellors shall adopt campus implementing regulations consistent with these *Policies*. The University shall publish these *Policies* and make them widely available, and Chancellors shall do the same with respect to the implementing regulations for their campuses. This requirement may be satisfied through the on-line publication of these *Policies* and their respective campus implementing regulations. (See also Section 13.20 of these *Policies*.)

University of California PACAOS-30

# V.    PROCEDURES

The President shall consult as appropriate with Chancellors, Vice Presidents, the Office of the General Counsel, and Universitywide advisory committees prior to amending these *Policies*. Chancellors shall consult with faculty, students, and staff prior to submitting to the President any campus recommendations related to proposed amendments to these *Policies*. Amendments that are specifically mandated by law, however, do not require consultation with campus representatives or Universitywide advisory committees to the extent that legal requirements do not permit such consultation. (See also Section 13.10 of these *Policies.*)

Chancellors shall consult with students (including student governments), faculty, and staff in the development or revision of campus implementing regulations except when the development or revision of such regulations results from changes to these *Policies* that have been specifically mandated by law. Campuses shall specify procedures, including consultation processes, by which campus implementing regulations may be developed or revised. (See also Section 13.30 of these *Policies.*)

Prior to their adoption, all proposed campus implementing regulations, including all substantive modifications to existing such regulations, shall be submitted to the Office of the President for review, in consultation with the Office of the General Counsel, for consistency with these *Policies* and the law. (See also Section 13.40 of these *Policies.*)

# VI.    RELATED INFORMATION

See also *Policies Applying to Campus Activities, Organizations and Students* sections:

| | |
|---|---|
| 10.00 | Preamble and General Provisions |
| 11.00 | Authority |
| 12.00 | Applicability |
| 13.00 | Development and Review of Universitywide Policies and Campus Implementing Regulations |
| 14.00 | Definitions |

# VII.   FREQUENTLY ASKED QUESTIONS

Not applicable

University of California PACAOS-30

## VIII.   REVISION HISTORY

Original issuance September 1, 1970
Revised October 29, 1973
Revised July 21, 1978
      Effective January 3, 1979
Revised October 31, 1983
Revised August 15, 1994
Revised July 28, 2004
Reformatted June 1, 2012 into the standard University of California policy template

# EXHIBIT C

Case 3:16-cv-01575-VC   Document 27   Filed 04/15/16   Page 20 of 24

# ASUCBL: 4304 Recall Election

## Section 1: Establishment

1.1     Pursuant to the Constitution, an Executive Officer or Senator may be removed from office through the recall process.

1.2     Any elected official shall be subject to recall by presentation to the Senate of a petition signed by at least twenty-five percent of the total number of votes in the previous regular election.

1.3     At the next regular meeting of the Senate, the dates of the recall election shall be set in accordance with with this bylaw. At that meeting, the official shall be allowed to speak in their own defense.

1.4     If two-thirds of the votes cast at the recall election approve, the official shall be removed from office.

1.5     The primary opponent of a recall is the elected official facing removal.

1.6     If the elected official resigns, the recall election shall not take place.

1.7     In the case of a successful recall election, the vacancy shall be filled pursuant to ASUCBL 1315: Vacancy & Removal of Executive Officers or ASUCBL 1206: Vacancy & Removal of Senators.

1.8     The recall petition may not be withdrawn after it has been submitted.

1.9     All bylaws relating to propositions shall apply to recall petitions and elections, as applicable.

1.10    The primary proponent of a recall must be a member of the Association. There may only be one primary proponent for each recall at any one time

## Section 2: Drafting of Recall Petition

2.1     To begin the petitioning process, the primary proponent of a recall must submit a *Proposition Primary Proponent/Opponent Form* per ASUCBL 4301§2.4.

2.2     Pursuant to the Constitution, the recall petition shall contain a statement of specific reasons for the proposed removal. The primary proponent must include a short version of this statement which is no longer than 150 words.

2.3     Within seven days or by the next regular Senate meeting, whichever is later, the Elections Council shall confirm the receipt of the *Proposition Primary*

*Proponent/Opponent Form*, shall verify that recall petition clearly names only one elected official and the statement of specific reasons for the proposed removal, and shall create the petition pursuant to this section.

2.4 The petition shall be an online form accessible publicly on the internet. The online form shall verify that each signer is a student who is entitled to be a member of the Association through the campus central central authentication service (CalNet or its successor program). The Elections Council shall ensure that each student can only sign each petition once. This system shall be annually approved by the Elections Council pursuant to ASUCBL 4101§3.1.11.

2.5 The online form shall contain the following parts:

   2.5.1 The name of the primary proponent.

   2.5.2 The title  "An election to recall [NAME as registered at the original election], [TITLE of position]".

   2.5.3 The statement of specific reasons for the proposed removal.

   2.5.4 A statement from the Elections Council regarding the number of signatures needed to place the question on the ballot, and the number of votes needed to remove the officer

   2.5.5 The following text:

   "Before signing this petition, please read the full text of the recall petition above. By signing below you declare that you are a UC Berkeley student, are a member of the Associated Students of the University of California, and have not signed this same petition before."

   2.5.6 A signature line where the signer shall be required to type their full name, as on record with UC Berkeley.

## Section 3: Recall Petition

3.1 The rules governing recall petitions petitions shall be identical to the rules governing voter-initiated proposition petitions contained in ASUCBL 4303§3.

## Section 4: Presentation to the Senate

4.1 For a petition to be considered presented to the Senate, the petition must achieve the requisite number of signatures as determined by the Elections Council and the primary proponent must announce it to the Senate during the public comment period.

4.2     The Elections Council shall verify that a petition has achieved requisite number of signatures at a public meeting pursuant 4104§3.1.1.13.

4.3     Once a petition has been created, it may not be amended except by order of the Judicial Council.

4.4     The Elections Council must preserve the recall petition for the same time period as the Elections Council preserves the ballots for the next regular election following the submission of the petition.

**Section 5: Recall Election**

5.1     The Senate shall set the election period of a recall election no later than one regular meeting following receipt of the petition on the advice of the Elections Council.

5.2     A recall election must be held no earlier than seven days and no later than the second regular Senate meeting following the setting of the voting period.

5.3     If another recall petition is submitted no later than seven days before the start of the voting period, the voting period may be postponed by the Senate to accommodate both recall elections. Alternatively, the Senate may add a recall elections submitted no later than seven days before the start of the voting period to the same ballot.

5.4     Elections rules, including campaign finance rules, shall apply to a recall election as if it were a proposition.

**Section 6: The Ballot & Tallying of Votes**

6.1     The Ballot shall contain the following:

        6.1.1   Title of the recall proposition.

        6.1.2   Statement from the primary proponent no longer than 150 words. The statement must be similar to the one contained on the recall petition. The statement shall be submitted with the recall petition to the Elections Council.

        6.1.3   Response from the primary opponent no longer than 150 words. The statement shall be submitted to the Elections Council no later than three days following the setting of the voting period.

        6.1.4   The question: "Shall [NAME as registered at the original election] be removed from [TITLE of position]?"

6.2     Half of the ballots shall include the options in the following order: "Yes", "No", "Abstain". The other half will list the options in the following order: "No", "Yes", "Abstain".

6.3     The "Yes" and "No" votes for each recall proposition shall be counted. If there are at
        least  twice as many "Yes" votes as "No" votes , the official shall be removed. Abstain
        votes shall not be counted except to determine if a required voter turnout threshold was
        met.

6.4     No endorsements or party names shall be placed on the ballot.

Gordon & Rees LLP
1111 Broadway, Suite 1700
Oakland, CA 94607

## CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon & Rees LLP, 1111 Broadway, Suite 1700, Oakland, CA.  On the date set forth below, I served a copy of the foregoing document(s) described as:

**RESPONSE TO ORDER TO SHOW CAUSE re PRELIMINARY INJUNCTION; SUPPORTING DECLARATION OF JAMIE R. RILEY**

☒   by electronically serving the document(s) described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:  April 15, 2016 at Oakland, California.

*Eileen Spiers*
_____
Eileen Spiers

1103812/25047896v.1