1 | RONALD CRUZ, State Bar No. 267038
SHANTA DRIVER, Michigan Bar No. P65007*
2 | United for Equality and Affirmative Action Legal Defense Fund (UEAALDF)
1985 Linden Street
3 | Oakland, CA 94607
(510) 875-4463 Fax: (313) 586-0089
4 | ronald.cruz@ueaa.net, shanta.driver@ueaa.net
Attorneys for Plaintiffs
5 | *Appearance *pro hac vice*

6

7 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8

9 | DEFEND AFFIRMATIVE ACTION PARTY, et al., | **CASE NO. 3:16-cv-01575-VC**

10 | Plaintiffs, | **PLAINTIFFS' REPLY TO UNIVERSITY OF CALIFORNIA DEFENDANTS RE: ORDER TO SHOW CAUSE**

11 | vs.

12 | REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., | Date:     May 4, 2016
Time:     10:00 a.m.
Courtroom: 4, 17th Floor
13 | | Judge:     Hon. Vince Chhabria

Defendants.

14

15 | The following is Plaintiffs' reply to the "Response to Order to Show Cause re:

16 | Preliminary Injunction" (Dkt. No. 27).

17 | I.     **The courts recognize student governments at colleges and universities are state actors when conducting their student-government elections.**

18

19 | In suits against college and university student governments, the colleges and

universities and their executive officers are universally found to be proper defendants for

20

21 | purposes of enjoining student governments because they exercise authority over those

student governments. See *Smith v. Regents of University of California,* 4 Cal. 4th 843 (1993);

22

23 | *Smith v. Regents of University of California,* 56 Cal.App. 4th 979, 982 (1997) ("The ASUC

1  Senate, as the arm of student government, is an integral part of the university."); *Flint v.*

2  *Dennison,* 488 F.3d 816 (9th Cir. 2007); and *Alabama Student Party v. Student Government*

3  *Ass'n of the University of Alabama,* 867 F.2d 1344, 1349 (11th Cir. 1989) ("the SGA

4  [Student Government Association]and the University are state actors").

5      Where the student government at issue receives funding and resources from the

6  University and acts on authority given to it by the University, it is undoubtedly a state actor:

> Although the student government enjoys a measure of autonomy, nevertheless it is a
> creature of governmental agencies. Its branches are advised and guided by faculty
> members; its constitution is required to be compatible with guidelines fostered by the
> Board of Higher Education; the Dean of Students, a government employee, is the
> final arbiter of election disputes. The student government receives money, both to
> cover its operating expenses and to fund the activities it supervises, from mandatory
> student fees collected by the College from the entire student body. Finally, its
> meetings are held on campus during hours specifically set aside by the College for
> student activities; thus, it may be presumed that both the College and the students
> derive benefit from this interlocking relationship. Although none of these factors,
> standing alone, would constitute the requisite degree of state involvement, in
> combination, they do. The plaintiff has met the threshold requirement. The state is
> sufficiently involved in the governance and control of Baruch College that the actions
> of its student government may be attributed to the state itself; the policies of the
> student government are held to the same constitutional standards as those that apply
> to the state.

*Sellman v. Baruch College of City University of New York,* 482 F.Supp. 475, 478 (S.D.N.Y.

1979).  This extensive intertwining also exists between the University of California ("UC")

with the Associated Students of the University of California ("ASUC") in the following ways

and in the ways shown further below. The University of California establishes Associated

Students organizations on its ten campuses that are *"official units of the university exercising*

*authorities* concerning students' affairs *by delegations* from The Regents, the President, and

the Chancellors." *See* EXHIBIT A (Regents' Policy 3301 ("Policy on Associated Students")

approved May 19, 1972) (emphasis added). Similarly, the University of California mandates

1  that "[t]he enabling documents [of the ASUC], as well as all their programs and activities"

2  must be created with consultation with the Chancellor and consistent with the policies of the

3  official unit of the University." *Id.*

4  **II.   The ASUC is a designated public forum that furthers the University's**
   **educational program and therefore cannot engage in viewpoint**
5  **discrimination or violate students' freedom of speech.**

6         Student governments that a university funds and delegates authority to operate as

7  essential "educational tools" of those universities. *Flint v. Dennison,* 488 F.3d 816, 827 (9th

8  Cir. 2007) ("The University uses [the student government] primarily as an educational tool—

9  a means to educate students on principles of representative government, parliamentary

10  procedure, political compromise, and leadership."). The University of California's policies

11  make the ASUC a designated public forum, a forum which exists "[w]hen the government

12  intentionally dedicates its property to expressive conduct," *id.* at 830 (internal citation

13  omitted):

14         [T]he University [of California]'s purposes for student governments are:

15         61.11: To provide students with the educational benefits of participation in student
          government;
16
          61.12: *To provide a forum* for the discussion of issues and ideas of interest,
17        importance, and/or of concern to students;

18         61.13: To provide financial and other tangible support for student activities and
          organizations *on a viewpoint-neutral basis,* consistent with the provisions of Section
19        86.00 of these *Policies,* in order to foster a sense of community and to further
          discussion among students of the broadest range of ideas…
20
   *See* EXHIBIT A, p. 2 (PACAOS-60) (emphasis added).
21
          A content-based restriction on speech in a designated public forum is subject to strict
22
   scrutiny, requiring the state to show a compelling interest in the restriction that is drawn
23

---

narrowly to meet that interest. *Flint,* 488 F.3d at 830.[1] As such, the University of California is responsible for ensuring that viewpoint discrimination does not occur and that students' freedom of speech are not violated under its purview: "[O]nce [a government] has opened a limited forum, … [it] must respect the lawful boundaries it has itself set… nor may [the government] discriminate against speech on the basis of its viewpoint." *Id.* at 831 (internal citations omitted).[2]

### III.    UC's role in holding ASUC elections and recognizing ASUC's elected officers

The University admits in their own brief that one option for relief is appealing to the Dean of Students (University's brief, Dkt. No. 27, p. 6-7). Thus, the University admits that the University has authority over how the ASUC runs its elections.

The University's own policies and practices place ultimate authority for the student government's activities with the Chancellor and his Vice Chancellor of Student Affairs. *See* EXHIBIT A (PACAOS-60), p. 2. Accordingly, UC's supervision of ASUC's activities is extensive. UC-Berkeley's Dean of Students is a regular sight at ASUC Senate meetings, and the Dean and other representatives of the chancellor meet regularly with ASUC officials. The "ASUC Student Union," on whose governing board the ASUC has partial representation, is

---

[1] The line of cases cited by the Associated Students of the University of California attempting to characterize the present case as something different, are inapplicable and distinguishable from the present case. They do not involve the viewpoint discrimination, selective and arbitrary application of Bylaws, and violations of due process that are evident in the present case.

[2] The result in *Flint v. Dennison* is inapposite to this case, because the present case involves viewpoint discrimination and the arbitrary, selective denial of due process, which was not at issue in *Flint* and by no standard is consistent with an "educational tool." It should not be the University's mission to train tomorrow's politicians to apply laws inconsistently and engage in bureaucratic intrigues to disadvantage people because of their political viewpoints.

1  under an Executive Director employed by the University: "The Executive Director of the SU

2  [Student Union] Admin shall be a University employee who shall report to UCB's

3  Chancellor or his/her designee…" *See* EXHIBIT B ("Commercial Activities and Student

4  Services Agreement – 2014 Revision"), p. 2. During the March 15, 2016 ASUC mandatory

5  candidates' meeting at which the ASUC Elections Council voted to deny DAAP's appeal,

6  Jon Rey, the ASUC Student Union's "ASUC Coordinator," not an employee of the ASUC

7  and employee of the University, was present at all times and was a non-voting member of

8  the Elections Council. Jon Rey was also present at, and consulted with, the ASUC Judicial

9  Council during its March 18, 2016 meeting where it voted to reject DAAP's petition. *Id.*

10  Furthermore, the ASUC does not have the resources to hire its own in-house counsel, and to

11  the extent that the ASUC Defendants sought legal advice during the events of March 2016

12  before this lawsuit was filed, it would have been with an attorney from the University. *See*

13  4th Declaration of Yvette Felarca (Dkt. No. 35-4), pp. 1-2, ¶¶ 6-8.

14          Regarding the University's recognition of, and delegation of University authority to,

15  ASUC officials, this relationship is also extensive. UC certifies the ASUC as the official

16  representative of the student body, and seats ASUC officials in university governing bodies:

17  "61.00. Chancellors have authority to authorize or discontinue recognition of student

18  governmental entities as *official student governments*, consistent with the status of such

19  governments as official units of the University of California… Such governments are

20  responsible for representing student constituencies comprising either the student body as a

21  whole or particular segments of it. Chancellors may also assign to such governments

22  specified powers and other responsibilities concerning student affairs." *See* EXHIBIT A

23  (PACAOS-60), p. 2.

1        Further, the ASUC has a unique relationship with the University in that it jointly

2 operates certain campus functions through the "ASUC Student Union," as described in the

3 Complaint:

4        29. In 1977, the ASUC was given exceptional status by the UC Regents to become
         "an independent, non-profit, unincorporated association" which would remain joined
5        to the Regents through *joint oversight "of certain services, activities, and facilities
         on the Berkeley campus* including the Student Union building, the ASUC bookstore,
6        and Bear's Lair restaurant, selected vending machine operations, and the Cal-ASUC
         Box Offices." See EXHIBIT A [to Complaint] (Regents' Policy 3301 "Policy on
7        Associated Students") approved June 17, 1977) [Dkt. No. 1-10]. The ASUC's special
         status was based on its economic control over the aforementioned assets which
8        provided funds to the ASUC in addition to the student fees it received from the
         Regents.

9
         30. In 1998, the ASUC was forced to cede control over the assets it possessed as part
10       a settlement of a lawsuit brought against the ASUC by the UC Regents. The 1998
         agreement titled "The ASUC Commercial Activities and Student Services
11       Agreement " (an agreement signed by the Regents of the University of California and
         the ASUC, effective March 19, 1998) gave control over the financial management of
12       the ASUC's Commercial Agreement to a body titled "the ASUC Auxiliary" ("the
         Auxiliary"). The agreement constituted the Auxiliary as a board consisting of five
13       representatives chosen by the Chancellor of UC Berkeley, and four members of the
         ASUC. The Executive Director of the Auxiliary is a university employee who
14       answers directly to the Chancellor. The UC Berkeley Chancellor has the right to veto
         any decisions made by the Auxiliary. The Auxiliary has the right to appeal the
15       Chancellor's veto to the Chancellor. The Chancellor has the final authority to accept
         or deny the appeal. See pages 10-11 of EXHIBIT B [to Complaint],(section on
16       "Chancellor's Authority") [Dkt. No. 1-11]. The ASUC Auxiliary is currently "a
         department within the Division of Student Affairs and acts as the administrative arm
17       of the ASUC" (*Daily Cal* May 19, 2014). The ASUC Commercial Activities
         Agreement of 1998 and those that followed, acknowledged the importance of the
18       ASUC's ownership and operation of the student unionand agreed to "continue this
         tradition of service to the campus."

19
20 Complaint, pp. 7-8 (Dkt. No. 2) (emphasis added).

21        Furthermore, much of the operation of ASUC's elections involves University-paid

22 staff from the ASUC Student Union: Defendant Aleksander Klimek states in his declaration

23 that the office staff who accepted DAAP's election forms (and also represented to Plaintiffs

1   that their party's forms were complete) were not employees of the ASUC but were

2   "employed of the University." *See* Dkt. No. 31 (Declaration of Aleksander Klimek), p. 6,

3   ¶23 ).

4   **IV.     Form of Relief**

5          As is detailed in Plaintiffs' reply to the brief by the ASUC (Dkt. No. 35), Plaintiffs

6   seek injunctive relief ordering the University of California and the ASUC to issue a public

7   written apology, pledge to respect the constitutional rights of students, and to return to the

8   practice of making the Mandatory Candidates' Meeting the final point at which parties may

9   declare their intention to run a slate and designate their candidates in the ASUC elections.

10  (Plaintiffs have filed a proposed order as Dkt. No. 36.)

11         In light of the above, an injunction must extend to the University and its officers,

12  because the University is obligated to ensure that the ASUC, as an "official unit" of the

13  University that performs an essential educational function, not discriminate or deny due

14  process to its participants. Furthermore, University employees have supervised, and continue

15  to supervise, the conduct of the ASUC Elections Council and Judicial Council whose actions

16  are at issue. Additionally, the basic administrative functions of running the elections,

17  including the process by which candidate and party forms are collected, are done by

18  University employees.

19

20                                  By Plaintiffs' Attorneys,
                                    UNITED FOR EQUALITY AND AFFIRMATIVE
21                                  ACTION LEGAL DEFENSE FUND

22                                  BY:     /s/ Ronald Cruz
                                    Ronald Cruz (State Bar No. 267038)
23                                  Shanta Driver* (Michigan Bar No. P65007)

PLAINTIFFS' REPLY TO UNIVERSITY OF CALIFORNIA DEFENDANTS RE: ORDER
TO SHOW CAUSE
Case No. 3:16-cv-01575-VC

1   1985 Linden Street
    Oakland, CA 94607
2   (510) 875-4463, Fax: (313) 586-0089
    *Appearance *pro hac vice*
3
    Dated:  April 25, 2016
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFFS' REPLY TO UNIVERSITY OF CALIFORNIA DEFENDANTS RE: ORDER
TO SHOW CAUSE
Case No. 3:16-cv-01575-VC